UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| STANDARD INSURANCES, a Utah corporation; STANDARD PLUMBING SUPPLY, a Utah corporation; PLASTIC SERVICES AND PRODUCTS, a Utah limited liability company; THE REESE FAMILY 101 TRUST, a Utah trust; POLYMER COMPOUNDING, a Utah limited liability company; STANDARD LOGISTIC SERVICES, a Utah limited liability company; REESE REAL ESTATE & INVESTMENT, a Utah corporation; RICHARD N REESE FAMILY LIMITED LIABILITY, a Utah limited liability company; UD DESIGN, a Utah corporation; AIRE-FLO HEATING & AIR CONDITIONING, a Utah corporation; KSR LEGACY INVESTMENT, a Utah corporation; DA DI BATHWARE, a Utah limited liability company; CLIFCO SHEET METAL MANUFACTURING, a Utah limited liability company; REESESOURCE LEASING, a Utah limited liability company; RICHARD N. REESE, an individual; and JILL P. REESE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNAL REVENUE SERVICE; DEPARTMENT OF THE TREASURY; and UNITED STATES OF AMERICA,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>Case No. 2:23-cv-47-HCN-DAO<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

After the IRS audited them, terminated their favorable tax status, and issued them notices of deficiency, the Plaintiffs brought this suit, seeking declaratory and injunctive relief. The IRS

moves to dismiss, both for lack of jurisdiction and for failure to state a claim.[1] The court grants the motion to dismiss on jurisdictional grounds.

I.

The Plaintiffs in this action include Richard and Jill Reese. *See* Dkt. No. 2 at 6 ¶ 17. The Reeses are the grantors of the Reese Family 101 Trust, another of the Plaintiffs, which in turn owns interests in the remaining Plaintiffs, various entities related to the Reeses. *See id.* at 4–6 ¶¶ 3–17. Among these entities is Standard Insurances Company, which is wholly owned by the Trust, and which insures the Trust and the other Plaintiffs. *See id.* at 6 ¶ 18. A subsidiary that insures a parent in this manner is called a "captive" insurance company, and—if it satisfies certain criteria—may elect favorable tax treatment under I.R.C. § 831(b) as a "micro-captive" insurer. Standard Insurances elected this favorable tax treatment starting in 2017. *See id.* at 12–14 ¶¶ 39–49.

The IRS recently became suspicious of some micro-captive insurance arrangements. In 2016, it published Notice 2016-66, which designated certain micro-captive transactions as "transactions of interest" under Treas. Reg. § 1.6011-4(b)(6) and I.R.C. §§ 6111 and 6112, subjecting certain micro-captive insurers (and their insureds) to special reporting requirements. *See* Transaction of Interest—Section 831(B) Micro-Captive Transactions, 2016-47 I.R.B. 745 (2016). And in late 2020, the IRS began an audit of Standard Insurances and several of the other Plaintiffs. *See* Dkt. No. 2 at 14 ¶ 51. Two years later, the IRS decided that Standard Insurances was ineligible for the favorable tax treatment it had claimed and issued deficiency notices to Standard Insurances and to some of the other Plaintiffs. *See id.* at 16 ¶ 59.

---

[1] For simplicity, the court will refer to the Defendants collectively as the "IRS."

2

The Plaintiffs paid the allegedly deficient taxes, *see* Dkt. No. 23 at 9, but challenged the notices of deficiency in tax court. Those cases remain pending. *See* Dkt. No. 42 at 53–54 (53:10–54:6); *id.* at 58–59 (58:23–59:3).[2] The Plaintiffs then filed this lawsuit in federal district court, contending that both Notice 2016-66 and the IRS's audit were unlawful. *See* Dkt. No. 2. The Plaintiffs sought three kinds of relief: (1) a declaratory judgment "declaring Notice 2016-66 unlawful and unenforceable" and "setting Notice 2016-66 aside in its entirety," *id.* at 26 ¶¶ A & B; (2) an injunction ordering the IRS "to return or destroy (and certify any such destruction) all documents and information produced or otherwise provided by Plaintiffs pursuant to the unlawful Notice 2016-66 as well as the subsequent unlawful audit and relieving Plaintiffs of any obligations under Notice 2016-66," *id.* ¶ C; and (3) a declaratory judgment "declaring Standard Insurances as a legitimate and legally recognized captive insurance company as determined by the Utah Insurance Department, [and] finding Defendants' determination to the contrary to be void, improper and unenforceable," *id.* at 27 ¶ D.[3]

## II.

Before it may consider the merits of an action, the court must first assure itself of its subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). In doing so here, the court takes the Plaintiffs' well-pleaded factual allegations as true

---

[2] The tax-court cases have all been consolidated together. *See Standard Ins. Co. v. Comm'r*, No. 22406-22 (T.C.), Dkt. No. 13. In December 2023, the Tax Court continued the cases without setting a new trial date and ordered the parties to provide status reports every 120 days. *See, e.g.*, *id.*, Dkt. No. 10. The parties appear to have filed status reports as recently as this month, *see id.*, Dkt. Nos. 23 & 24, and the cases remain pending.

[3] At first the Plaintiffs also sought "any additional relief, including the imposition of fees and costs, including all costs and fees incurred by Plaintiffs during the audit and stemming from the audit, as the Court deems equitable and just or as otherwise allowable by law." *Id.* ¶ E. The Plaintiffs have subsequently withdrawn their request for costs and fees stemming from the audit, however. *See* Dkt. No. 39. And given its conclusion that it must dismiss the Plaintiffs' suit, the court will not otherwise award any fees or costs to the Plaintiffs.

and considers whether—based on those facts—the Plaintiffs plausibly have pleaded jurisdiction. *See Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022).[4]

The court concludes that it lacks subject-matter jurisdiction over this matter for two reasons: first, the Anti-Injunction Act and the Declaratory Judgment Act bar the court from awarding most of the relief that the Plaintiffs seek (and perhaps the lawsuit in its entirety); second, to the extent any of that relief is not barred by statute, the court lacks the ability to award "meaningful" relief, rendering this action moot.

### A.

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." I.R.C. § 7421(a). The Declaratory Judgment Act includes a similar prohibition: "In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes*," federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Tenth Circuit has described these two prohibitions as "coterminous" jurisdictional rules that "may not be forfeited or waived." *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1114–15 & n.2 (10th Cir. 2017) (cleaned up).

There is a strong argument that these coterminous statutory prohibitions bar the Plaintiffs' suit in its entirety. After all, the plain language of the Anti-Injunction Act directs

---

[4] This is because the IRS's invocation of the Anti-Injunction Act, the Declaratory Judgment Act, and the mootness doctrine amount to "facial" challenges to this court's jurisdiction. *Id*. Parties may also bring "factual" challenges under Federal Rule of Civil Procedure 12(b)(1), meaning that they may "go[ ] beyond the allegations in the complaint and adduce[ ] evidence to contest jurisdiction." *Id.* (quoting *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020)). Although the IRS makes a factual challenge to the Plaintiffs' standing, *see* Dkt. No. 20 at 22–25, the court need not reach that argument because there is no mandatory "sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–85 (1999).

courts to determine whether a plaintiff's "*suit*" is brought "for the *purpose* of restraining the assessment or collection of any tax." I.R.C. § 7421(a) (emphasis added).[5] And the Supreme Court has directed that, when deciding whether the Anti-Injunction Act applies, courts should look to "the relief the suit requests" in order to discern "the *action's* objective aim," or "the substance of the *suit*." *CIC Servs. LLC v. IRS*, 593 U.S. 209, 217–18 (2021) (emphasis added). All of this certainly suggests that, rather than dissecting the Plaintiffs' complaint and deciding whether *each specific prayer for relief* is barred, the court instead should evaluate whether the *suit as a whole* is brought with the "objective aim" of "restraining the assessment or collection of a tax." *But cf. Rivera v. IRS*, 708 F. App'x 508, 510–12 (10th Cir. 2017).

Here, the court would readily conclude that the objective aim of this lawsuit is to restrain the collection of the tax that the IRS imposed on the Plaintiffs when it issued them the notices of deficiency they are currently challenging in tax court. The core of the relief they seek here is an order requiring the IRS to return or destroy the documents it is using in those pending tax-court cases, *see* Dkt. No. 2 at 26 ¶ C; Dkt. No. 42 at 53–54 (53:10–54:6); *id.* at 58–59 (58:23–59:3), and a declaration voiding the determination undergirding the notices of deficiency that Standard Insurances is not a "legitimate" micro-captive insurance company, *see* Dkt. No. 2 at 27 ¶ D; *id.* at 16 ¶ 59. Indeed, elsewhere in their complaint, the Plaintiffs readily admit that they are asking the court to "declare that the IRS' determinations resulting from the audit are void, improper, and unenforceable," and to order the IRS to "concede[ ] that its notices of deficiency were invalid" and to "concede[ ] the Plaintiffs' cases before the U.S. Tax Court." Dkt. No. 2 at 20 ¶ 75.

---

[5] In this respect, the Anti-Injunction Act differs from the Tax Injunction Act, which does not speak of *suits* or *cases*, but instead provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341.

5

B.

The court need not decide whether the Anti-Injunction Act and Declaratory Judgment Act require it to evaluate the Plaintiffs' suit as a whole or instead to parse the Plaintiffs' prayer for relief on a granular basis, however. For even taking the latter approach, the court concludes that these statutes bar most of the specific relief sought and that—when limited to the remaining relief—this action is moot.

1.

The court begins with Paragraph D of the Plaintiffs' prayer for relief. There, the Plaintiffs seek a declaratory judgment "declaring Standard Insurances as a legitimate and legally recognized captive insurance company as determined by the Utah Insurance Department," and "finding Defendants' determination to the contrary to be void, improper, and unenforceable." Dkt. No. 2 at 27 ¶ D.

Given that this determination was the basis for the notices of deficiency the IRS issued to the Plaintiffs, a declaratory judgment voiding this determination would directly restrain the assessment or collection of a tax. "Assessment," the Supreme Court has held, "refers to the official recording of a taxpayer's liability." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 9 (2015). "Collection" is "the act of obtaining payment of taxes due." *Id.* at 10.

Although the IRS arguably has already "collected" taxes here—because it has issued notices of deficiency, which the Plaintiffs represent that they have paid, *see* Dkt. No. 23 at 9—the Plaintiffs are actively challenging those notices and seeking a return of those payments in tax court. As already discussed, the Plaintiffs appear to admit the self-evident proposition that awarding the declaratory judgment sought in Paragraph D would effectively require the IRS to concede those pending tax-court cases and to return the taxes it has already "collected." *Cf.*

*Lunnon v. United States*, No. 21-2140, 2022 WL 17729999, at *1–2 (10th Cir. Dec. 16, 2022) (unpublished). That prayer is thus squarely barred by the Declaratory Judgement Act.

In Paragraph C of the prayer for relief, the Plaintiffs seek an injunction requiring "Defendants to return or destroy (and certify any such destruction) all documents and information produced or otherwise provided by Plaintiffs pursuant to the unlawful Notice 2016-66 as well as the subsequent unlawful audit and relieving Plaintiffs of any obligations under Notice 2016-66." Dkt. No. 2 at 26 ¶ C. The court concludes that this relief is likewise barred by the Anti-Injunction Act and the Declaratory Judgment Act.

The Tenth Circuit has long held that that these statutes' coterminous jurisdictional bar "applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection." *Lowrie v. United States*, 824 F.2d 827, 830 (10th Cir. 1987) (citing *Dickens v. United States*, 671 F.2d 969, 971 (6th Cir. 1982)) (applying this standard to the Anti-Injunction Act); *accord Green Sol.*, 855 F.3d at 1115–20 (reaffirming *Lowrie*'s standard in the wake of *Direct Marketing* and applying it to the Declaratory Judgment Act).

Indeed, the Tenth Circuit has specifically applied this bar to foreclose a plaintiff's request for an injunction ordering the return of documents being used in an ongoing IRS investigation. *See Lowrie*, 824 F.2d at 831. Because the tax investigation was still pending, the Tenth Circuit reasoned, it was "clear" that "the purpose behind [the plaintiff's] suit" was not "for the mere return of copies of records," but instead "to head off action against him, of whatever nature, by the IRS." *Id.*; *see also Green Sol.*, 855 F.3d at 1114 (concluding that the Anti-Injunction Act prohibited enjoining the IRS from investigating business records where the IRS's investigation sought to determine whether a business was ineligible for tax credits that it had claimed); *cf.*

7

*Dickens*, 671 F.2d at 971 ("A suit designed to prohibit the use of information to calculate an assessment is a suit designed 'for the purpose of restraining' an assessment under the statute.")

So too here. Because the Plaintiffs' tax-court cases are still pending, it is evident that they seek the return (or destruction) of their records "for the purpose" of forcing the IRS to concede those cases and return the taxes it has collected.

**2.**

The only remaining relief the Plaintiffs seek is found in Paragraphs A and B of their prayer for relief, in which they request a declaratory judgment "declaring Notice 2016-66 unlawful and unenforceable" and "setting Notice 2016-66 aside in its entirety." Dkt. No. 2 at 26 ¶¶ A & B.[6] But in January 2023, the IRS issued Announcement 2023-11, announcing that it was "obsoleting Notice 2016-66," and that it "[would] not enforce the disclosure requirements or penalties that are dependent upon the procedural validity of Notice 2016-66." Listed Transactions and Transactions of Interest, 2023-17 I.R.B. 798 (2023).

"There is no point in ordering an action that has already taken place." *Southern Utah Wilderness All. v. Smith*, 110 F.3d 724, 728 (10th Cir. 1997). As a result of the IRS's actions, the Notice is no longer in effect, and "declaring [it] unlawful and unenforceable" or "setting [it] aside in its entirety" would serve no purpose. Because the court is thus unable to afford the Plaintiffs "meaningful relief," *id.* at 729, it follows that this action is moot and that this court accordingly lacks jurisdiction over it, *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109–10 (10th Cir. 2010).

---

[6] Paragraph A seeks a declaration that the Notice violates the Administrative Procedure Act, whereas Paragraph B seeks a declaration that the Notice violates the Congressional Review Act. *See id.*

8

To be sure, the Plaintiffs assert the "capable of repetition, yet evading review" exception to mootness. *See* Dkt. No. 23 at 13–15. But that exception is exceedingly narrow and is clearly inapplicable here. *See Southern Utah Wilderness All.*, 110 F.3d at 729; *Robert v. Austin*, 72 F.4th 1160, 1164–65 (10th Cir. 2023).

Assuming the Plaintiffs instead mean to invoke the "voluntary cessation" exception to mootness, which provides that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), the court concludes that this exception is likewise inapplicable here.

To avoid the exception, the IRS must show that its "allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). It need not, however, show that "there is no possibility" of recurrence. *Brown v. Buhman*, 822 F.3d 1151, 1175 (10th Cir. 2016). Further, courts "accord 'more solicitude' to government officials' claims that their voluntary conduct moots a case." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 (10th Cir. 2019) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15). That is because "government self-correction provides a secure foundation for mootness so long as it seems genuine." *Brown*, 822 F.3d at 1167–68 (cleaned up). And that is especially so when the government makes a "'withdrawal or alteration of administrative policies' through a formal process." *Prison Legal News*, 944 F.3d at 881 (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1117). Such formal changes usually "foreclose a *reasonable* chance" that the "challenged conduct" will recur. *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (emphasis added).

Here, the IRS announced the Notice's obsolescence through such a "formal process." To be sure, it did so alongside a notice of *proposed* rulemaking rather than in a final rule. But *Prison*

*Legal News* does not contemplate that a "formal process" must involve notice and comment. To the contrary, that case was mooted when the prison warden *unilaterally* changed the challenged policy. *See* 944 F.3d at 882–84.

In all events, there are good reasons to think the IRS unlikely to walk back its withdrawal of the challenged notice. In its announcement, the IRS explained that it was "obsoleting" this notice because several courts had vacated or invalidated IRS notices that had not been promulgated through notice-and-comment procedures. Despite expressing disagreement that such procedures were necessary, the IRS indicated that it wanted to "avoid[ ] confusion and prevent[ ] disruption," and was beginning the legislative rulemaking process to establish new regulations identifying micro-captive transactions of interest. Listed Transactions and Transactions of Interest, 2023-17 I.R.B. 798 (2023); *see also* Micro-Captive Listed Transactions and Micro-Captive Transactions of Interest, 88 Fed. Reg. 21547 (proposed Apr. 11, 2023).

The Sixth Circuit persuasively concluded that an action seeking to vacate a different IRS notice was mooted when the IRS published a similar announcement in the Internal Revenue Bulletin indicating that it would not apply the notice to parties in that circuit. *See Mann Constr., Inc. v. United States*, 86 F.4th 1159, 1163–64 (6th Cir. 2023); I.R.S. Announcement 2022-28, 2022-52 I.R.B. 659 (Dec. 27, 2022). This court likewise concludes that the IRS's announcement here moots Plaintiff's prayer that Notice 2016-66 be set aside or declared unlawful and unenforceable based on the alleged procedural defects in its promulgation.

\*     \*     \*

For the foregoing reasons, the IRS's motion to dismiss for lack of jurisdiction is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 23rd day of August, 2024.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge